## LINCOLN CHEMICAL CO. v. EDWARDS, Internal Revenue Collector.

(Circuit Court of Appeals, Second Circuit. February 5, 1923.)

No. 33.

1. **Internal revenue ⊚⟳7—Increased value of process resulting from expenditures thereon figures as asset in estimating "earned surplus."**

Where the only asset of a corporation was a secret process which was intangible and of no value in April, 1909, the date on which the actual value of intangible assets was to be determined under the Revenue Law, but thereafter money was expended in developing the process, so that in 1917 the company had a surplus above its capital stock, which was its only liability, the increased value of the process, due to the expenditures thereon, is to be considered as earned surplus, which, under Revenue Law 1918, § 207 (Comp. St. 1918, § 6336⅞h), is an element of invested capital, in determining whether the corporation had more than a nominal invested capital under section 209 (Comp. St. 1918, § 6336⅞j), though the increased value of the process due to the war could not be so considered.

2. **Internal revenue ⊚⟳7—"Invested capital," based on actual costs, and not including appreciation in values, not equivalent to any acquisition of capital property.**

In determining the deduction to be permitted under the assessment of excess profits tax, the term "invested capital" cannot be applied to any appreciation in values which is not in substance and effect a new acquisition of capital property, being based on actual costs, and not embracing appreciations in value due to the unearned increment.

3. **Internal revenue ⊚⟳7—Substantial surplus accumulated from earnings not considered nominal.**

Where a company, as to excess profits tax, claimed that it was a corporation having only a nominal capital, but its assets consisted, not only of a valuable secret process, but also a substantial amount of cash on hand, which it had acquired solely through the accumulation of earnings, such surplus cannot be considered as merely nominal.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Lincoln Chemical Company against William H. Edwards, as Collector of Internal Revenue, for refund of a part of the excess profits tax for 1917. Judgment for defendant (272 Fed. 142), and plaintiff brings error. Affirmed.

Robert B. Honeyman, of New York City, for plaintiff in error.

William Hayward, U. S. Atty., of New York City (Richard S. Holmes, Sp. Asst. U. S. Atty., of New York City, and H. M. Darling, Sp. Atty. Bureau of Internal Revenue, of Washington, D. C., of counsel), for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This action was brought by a New York corporation against the collector of internal revenue in the Second district of New York to recover the sum of $6,434.35 additional income and excess profits tax assessed by the Commissioner of Internal Revenue for the fiscal year ending December 31, 1917, which was paid under protest on April 9, 1919. It is alleged that the payment

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

was made under compulsion, and in order to avoid the distraint and sale of plaintiff's property and other legal proceedings; and it appears that on May 2, 1919, the plaintiff filed a claim for refund, and that, although six months had elapsed since the filing of the claim for a refund, no action had been taken by the Commissioner.

The case was tried before a jury of one. At the conclusion of the testimony, each side moved for a direction of a verdict. The court, after taking time for deliberation, filed an opinion, stating that the plaintiff had not proved its case, and directed a verdict for the defendant, dismissing the complaint upon the merits.

The plaintiff, in filing its return for 1917, calculated its capital upon the basis of section 209 of the Act of October 3, 1917. That section provides as follows:

"That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction." 40 Stat. part 1, p. 307 (Comp. St. 1918, § 6336⅗j).

That section applies to a trade or business "having no invested capital or not more than a nominal capital." If the plaintiff in 1917 had no invested capital, or not more than a nominal capital, its income tax return plainly was to be assessed, as the plaintiff claims, in accordance with section 209.

The Commissioner of Internal Revenue, however, denied the claim that the assessment could be made under section 209, and imposed an additional assessment in the amount hereinbefore mentioned of $6,-434.35. This he did under section 210 of the act (Comp. St. 1918, § 6336⅗k), which may be found in the margin.[1]

In thus proceeding the Commissioner overruled the plaintiff's contention that it had no invested capital, or not more than a nominal capital, and held that the case was one in which the officials were unable satisfactorily to determine the invested capital and so came within the provisions of section 210, and article 52 of Regulations 41, which provide in such exceptional cases for assessment based on a comparison with representative concerns engaged in a like or similar business.

In determining whether the plaintiff's claim is correct, it is necessary to examine into the facts to ascertain what basis there is for the

---

[1] "Sec. 210. That if the Secretary of the Treasury is unable in any case satisfactorily to determine the invested capital, the amount of the deduction shall be the sum of (1) an amount equal to the same proportion of the net income of the trade or business received during the taxable year as the proportion which the average deduction (determined in the same manner as provided in section two hundred and three, without including the $3,000 or $6,000 therein referred to) for the same calendar year of representative corporations, partnerships, and individuals, engaged in a like or similar trade or business, bears to the total net income of the trade or business received by such corporations, partnerships, and individuals, plus (2) in the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000."

claim that the plaintiff was in 1917 a corporation without an invested capital, or no more than a nominal capital. The plaintiff is conceded to be a corporation having an authorized capital stock of $10,000, all of which is issued and outstanding. At the beginning of the year 1917 its only assets appear to have been cash variously estimated at $7,-367.64 and $11,017.83, together with a secret process for extracting theobromine, a valuable drug, from cocoa shells.

The process referred to had been acquired by the corporation in 1909, at the time of its organization, by the issue of $2,400 par value of its capital stock to one Robert Riddle. The balance of the stock, $7,600 par value, had been issued at the same time to Herman A. Loeb, in exchange for plant, machinery, raw materials, etc., and $200 in cash. Riddle and Loeb thus acquired all the stock and were the only persons who were financially interested in the company. Riddle was an inventor, and before the incorporation took place came to Loeb with a process for extracting cocoa butter out of cocoa shells. The process having been shown to be worthless, Riddle suggested to Loeb the possibility of converting the process into one from which there might be extracted from cocoa shells a substance known as theobromine, a chemical substance allied to caffeine. Loeb continued to advance money to Riddle to aid him in further experiments, until he became afraid that he was getting too deeply involved, and he determined to form a corporation to carry on the work. Thereupon they formed the corporation—Riddle transferring to it the process and agreeing to work for the company for five years at a salary of $1,800. The stock of the company was issued to Riddle and Loeb in the amounts and for the reasons already stated.

It appears that in the years 1909 and 1910 the company borrowed $19,716.84, of which amount $19,314.07 was obtained from Loeb and his relations. This money was borrowed by the corporation and expended by it in the improvement of the process, and by April, 1910, the process was successfully worked out. But the corporation was unable to secure the means to carry on the work, and it resulted that it sold its machinery and stock on hand for $1,563.49, and entered into a license agreement with the Schaefer Alkaloid Works of Maywood, N. J., under which agreement the licensee was to use the process, paying the corporation a royalty for the privilege. This agreement was later replaced by a second agreement dated June 20, 1912, under which the licensee agreed to pay the corporation a fixed royalty of $2,000 a year for the use of the process, and to sell to the corporation such quantities of theobromine as it might order at a price not to exceed $2.50 per pound. During the Great War the price of theobromine rose and the affairs of the plaintiff corporation prospered. It was in a short time able, not only to pay the interest on its indebtedness, but from time to time it made payments on account of the principal; and by January 1, 1917, all of the money borrowed had been repaid out of the earnings of the company. Throughout that year the corporation paid its officers liberal salaries and earned a net income of $26,850.12, all of which, with the exception of $45.18 interest, was derived from the process and the contract with the Schaefer Alkaloid

Works. On January 1, 1917, the company, having all its debts paid, had a surplus of $13,000 after writing off a depreciation of $7,700. During the year 1917 its assets consisted of the secret process, its contract with the Schaefer Alkaloid Works, and its cash on hand.

The case depends upon the meaning of the phrase "invested capital" and "nominal capital," as used in section 209 of the act. What is to be deemed "invested capital" is set forth in section 207 (Comp. St. 1918, § 6336⅜h); both sections being under title 2 of the act. The pertinent part of section 207 may be found in the margin.[2]

Section 207 of the act received the consideration of the Supreme Court in La Belle Iron Works v. United States, 256 U. S. 377, 41 Sup. Ct. 528, 65 L. Ed. 998. Mr. Justice Pitney, writing for the court in that case, said:

"The word 'invested' in itself imports a restrictive qualification. When speaking of the capital of a business corporation or partnership, such as the act deals with, 'to invest' imports a laying out of money, or money's worth, either by an individual in acquiring an interest in the concern with a view to obtaining income or profit from the conduct of its business, or by the concern itself in acquiring something of permanent use in the business; in either case involving a conversion of wealth from one form into another suitable for employment in the making of the hoped-for gains. See Webster's New Internat. Dict. 'invest,' 8; Century Dict. 'invest,' 7; Standard Dict. 'invest,' 1. In order to adhere to this restricted meaning and avoid exaggerated valuations, the draftsman of the act resorted to the test of including nothing but money, or money's worth, actually contributed or converted in exchange for shares of the capital stock, or actually acquired through the business activities of the corporation or partnership (involving

_____

[2] "Sec. 207. That as used in this title, the term 'invested capital' for any year means the average invested capital for the year, as defined and limited in this title, averaged monthly.

"As used in this title 'invested capital' does not include stocks, bonds (other than obligations of the United States), or other assets, the income from which is not subject to the tax imposed by this title nor money or other property borrowed, and means subject to the above limitations:

"(a) In the case of a corporation: * * * (1) Actual cash paid in; (2) the actual cash value of tangible property paid in other than cash, for stock or shares in such corporation * * * at the time of such payment (but in case such tangible property was paid in prior to January first, nineteen hundred and fourteen, the actual cash value of such property as of January first, ninteen hundred and fourteen, but in no case to exceed the par value of the original stock or shares specifically issued therefor); and (3) paid in or earned surplus and undivided profits used or employed in the business, exclusive of undivided profits earned during the taxable year: Provided, that * * * (b) * * * intangible property, shall be included as invested capital if the corporation * * * made payment bona fide therefor specifically as such in cash or tangible property, the value of such * * * intangible property, not to exceed the actual cash or actual cash value of the tangible property paid therefor at the time of such payment; but * * * intangible property, bona fide purchased, prior to March third, nineteen hundred and seventeen, * * * for and with shares in the capital stock of a corporation (issued prior to March third, nineteen hundred and seventeen), in an amount not to exceed, on March third, nineteen hundred and seventeen, twenty per centum of the total * * * shares of the capital stock of the corporation, shall be included in invested capital at a value not to exceed the actual cash value at the time of such purchase, and in case of issue of stock therefor not to exceed the par value of such stock. * * * *"

again a conversion) and coming in ab extra, by way of increase over the original capital stock."

The construction given to an act of Congress, by a department of the government charged with the execution, is not controlling upon the courts as the department is not authorized to exercise the judicial function; but it is entitled to great consideration when the meaning of a statute is doubtful. United States v. Hermanos y Compania, 209 U. S. 337, 339, 28 Sup. Ct. 532, 52 L. Ed. 821; United States v. Healey, 160 U. S. 136, 16 Sup. Ct. 247, 40 L. Ed. 369; Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269. And the consideration given to such construction is particularly weighty in the case of statutes levying impositions where the construction had been favorable to the persons affected. State v. Orleans Parish Bd. of Assessors, 52 La. Ann. 223, 26 South. 872; Attorney General v. Newbern, 21 N. C. 216.

The Regulations of the Commissioner of Internal Revenue No. 45, art. 840, show the understanding of the department that amounts expended for improvements in tangible property, such as plant, equipment, and the like, are to be added to the surplus account, if such assets are in active use by the corporation. Article 841 shows that expenses in the development of intangible property are to be added to surplus account unless the taxpayer has seen fit to charge such expenditures to current expenses. See article 843 of the same Regulations.

And in the Memorandum of the Committee on Appeals and Review No. 115 (unreported) it was held that a manufacturing company which spent $2,400,000 of its current earnings before 1909 in the development of a trade-name, and charged this amount to capital account, was entitled to include this amount in its invested capital under the excess profits tax law. So also in Recommendation of the Committee on Appeals and Review No. 134 (Digest of Income Tax Rulings No. 19, page 460; Cumulative Bulletin 5, 1719), the committee stated that it was—

"of the opinion that a corporation should be allowed as invested capital for the taxable year 1917 the full amount expended by it in cash and capitalized prior to 1909, as a part of the cost of developing certain intangible assets, which it had acquired for stock and cash."

It must be admitted that, if the corporation can show that on January 1, 1917, it had no "invested capital," or not more than a "nominal capital," within the meaning of section 209, it was entitled to be assessed under that section. We think it clearly appears that at the time above mentioned the company had some invested capital, and therefore was not entitled to be assessed under the section referred to.

When the plaintiff was incorporated in 1909, it had an authorized capital stock of $10,000, all of which it issued. This stock, as already shown, was issued for $200 in cash and the remainder for property. The property it received was the secret process for which it paid in stock $2,400 in par value, and machinery and supplies for which it paid in stock $7,400 in par value. Its capital at that time consisted of tangible and intangible property. Its intangible property consisted

of the secret process. But all the invested capital in the form of cash and tangible property paid in for stock had disappeared by 1917: Its only assets in 1917 were the secret process and the cash it had on hand, which is variously estimated at $7,367.64 and $11,017.83. The company, however, had expended prior to 1917, to improve its process, $19,314.01. This it did by borrowing moneys, which it repaid out of its earnings in the years 1914, 1915, and 1916. There is no evidence in the record that those expenditures were ever treated as a current expense. The money used in improving the process is not found in its surplus, but the company still has the improvements, and the improvements constitute surplus to the extent of their value, and as these expenditures were made to improve the process which the company used in its business, it has an invested capital in the amount expended.

The case is not unlike, in principle, that of a company which finds it necessary to enlarge or improve its plant. If it is without the necessary capital to make the improvement, it borrows the money and repays it out of its earnings. In so doing its earnings so paid have disappeared from its surplus, but the improvements made to the plant take the place of the surplus expended and constitute a part of the invested capital. That the prosperity of the company according to its own opinion was built upon the process and the improvements made therein appears from a resolution adopted by its directors on January 9, 1917, in which they refer to the services given by Riddle and Loeb "to the development of the process owned by this company, to which processes this company owes its present prosperity." And it is not without interest that in the income tax return, which the company made in 1916, it declared that the fair market value of the process was $19,716.84, and claimed a deduction for depreciation for all years to date of $7,761.42. This left the value of the process at the beginning of the year 1917, at about $12,000.

[1-3] The contention of the appellant corporation is that in the year 1917 the taxes due from it were to be computed under section 209, inasmuch as, while the corporation originally had invested capital in the form of cash and tangible property paid in for stock, this had all disappeared prior to that year, and therefore could not be included in invested capital at that time. It claims that its only assets then were the secret process and cash representing profits of the previous year. As to the process, it was not improved, but was incomplete at the time of its acquisition, when it had only a nominal cash value; and reliance is placed on section 207(a), which declares that intangible property bona fide purchased prior to March 3, 1917, with shares in the capital stock in an amount not to exceed 20 per centum of the total shares of the capital stock "shall be included in invested capital at a value not to exceed the actual cash value at the time of such purchase, and in case of issue of stock therefor not to exceed the par value of such stock." The fallacy of the argument is in the assumption that the limitation placed by section 207 upon the amount at which intangible property paid in for stock may be included in invested capital applies merely to the original investment for the stock and that subsequent improvements of such assets are to be disregarded.

The case of La Belle Iron Works v. United States, supra, holds that under section 207 appreciated valuations of assets above costs are not to be included in "invested capital.". That phrase cannot be applied to any appreciation in values which is not in substance and effect a new acquisition of capital property by the company. "Invested capital" is based upon actual costs, and does not embrace appreciations in value due to the "unearned increment." In the La Belle Iron Works Case ore lands originally acquired by the corporation for $190,000 were proved by extensive explorations and developments to have a cash value of $10,105,400. The court, referring to this said it assumed that the cost of the exploration and development work might be regarded as earned surplus. The court said:

"It is said that the admitted increase in the value of appellant's ore lands is properly to be characterized as earned surplus, because it was the result of extensive exploration and development work. We assume that a proper sum, not exceeding, the cost of the work, might have been added to earned surplus on that account; but none such was stated in appellant's petition, nor, so far as appears, in its return of income. In the absence of such a showing it was not improper to attribute the entire $9,915,400, added to the book value of the ore property in the year 1912, to a mere appreciation in the value of the property; in short, to what is commonly known as the 'unearned increment,' not properly 'earned surplus,' within the meaning of the statute."

But in 1917 the process was not the only asset which the plaintiff possessed. It also had on hand cash which it had acquired solely through the accumulation of earnings. Whether it amounted to $11,017.83, as claimed, or only $7,367.64, is not material, so far as the question now presented is concerned. In any event its surplus was substantial, and cannot be considered as merely nominal.

The contract which the plaintiff has with the Schaefer Alkaloid Works and under which the plaintiff is entitled to receive a minimum royalty of $2,000 a year, with the right to call yearly for at least 3,000 pounds of theobromine at $2.50 a pound, and which had 10 years longer to run, need not be considered at this time. It manifestly cannot help the plaintiff's case. As the plaintiff was not engaged in business "having no invested capital or not more than a nominal capital," its contention that it was entitled to be assessed under section 209, and not under section 210, is without merit, and is denied.

Judgment affirmed.