## APPEAL OF HUGHES-O'ROURKE CONSTRUCTION CO.

Docket No. 1830. Submitted June 15, 1925. Decided November 11, 1925.

> A corporation, which, on January 1, 1917, had a paid-in capital of $5,250 and an accumulated surplus of $95,378.93, which amounts do not appear to have been either reduced or impaired during the year, is not a corporation "having no invested capital or not more than a nominal capital," within the meaning of section 209 of the Revenue Act of 1917.

*J. Marvin Haynes* and *C. J. McGuire, Esqs.*, for the taxpayer.
*E. C. Lake, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the calendar year 1917 in the amount of $9,243.10. The taxpayer alleges that it had not more than a nominal capital in 1917 and claims the right to assessment under section 209 of the Act of October 3, 1917. The Commissioner held that it is not entitled to assessment under section 209 and computed profits tax under section 210 of said Act of 1917.

### FINDINGS OF FACT.

1. The company was organized in 1905 as the Dallas Construction Co., with its principal place of business at Dallas, Tex. The capital stock issued at that time was $4,200—about $3,200 for construction tools and $1,000 for cash. In 1907 the name of the company was changed to Hughes-O'Rourke Construction Co., the stock of the Dallas Company was canceled, and a reissue of stock amounting to $5,250 was made. The additional $1,050 was on account of back salaries due. The amount of stock issued has not been changed since 1907. This stock was held by three individuals in 1917.

2. The taxpayer, in the year 1917, was engaged in general engineering and construction work. It was unlike the ordinary contractor, however, in that it seldom took contracts for construction, but acted principally as superintendent on contracts held by others. The superintending was done entirely by the taxpayer's officers. The remuneration was sometimes a fixed fee and sometimes was computed on a percentage basis.

3. The taxpayer, on these construction contracts, furnished none of the capital. With one slight exception in 1917, the entire capital for carrying out the construction projects was furnished by those who employed the taxpayer. This applied even to the pay rolls, the money for which was furnished by the contractor.

4. In 1917 the total cost of the construction work which the taxpayer superintended was approximately $6,500,000. Of this, over 99 per cent was on a fee basis.

5. The gross income for 1917 was $86,551.44. Of this, $80,273.52 was for professional services; $4,633.92 from a contract job; miscellaneous, $957.18; and the remainder, $686.80, was a reserve for bonus set up in prior years and not used.

6. The invested capital of the taxpayer, as shown by its books at December 31, 1916, was $100,628.93. All but $5,250 of this was accumulated surplus. Of the $100,628.93, $50,128.36 represented an investment to protect a mechanics' lien; $26,070.76 represented uncollected fees, due on building accounts; and $8,950 represented plant equipment and office fixtures.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

TRUSSELL: This appeal involves the interpretation of section 209 of the Revenue Act of 1917 as applied to or affecting the business and financial status of the taxpayer during the calendar year 1917.

Facing the emergency of extraordinary Federal expenses resulting from war conditions, Congress undertook, in enacting the Revenue Act of 1917, to increase the Government revenues by levying additional taxes upon what it pleased to denominate excess profits, and, in sections 200 to 208, inclusive, of said Act, provided the method of determining the quantity of such excess profits and an ascending scale of rates of additional taxes to be levied thereon. Then, recognizing that there might be cases in which an application of said methods and ascending scale of additional taxes would produce a serious inequality of taxation, it provided in section 209 of said Act as follows:

That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section two hundred and one, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000, and in the case of a domestic partnership or a citizen or resident of the United States $6,000; in the case of all other trades or business, no deduction.

In section 210 of the same Act Congress provided for further methods of correcting the inequalities which might result from an application of the above-mentioned ascending scale of taxation.

In the instant appeal the taxpayer contends that it is entitled to be treated as a corporation having not more than a nominal capital and urges in support of such claim that only $4,633.92, which is less than 6 per cent of its gross income, was the result of operations requiring the use of capital, and that $80,273.52, being more than 90 per cent of its gross income, was fees earned by the stockholders of the taxpayer corporation for personal services as construction engineers and superintendents, and that capital contributed in no substantial manner to the production of this large proportion of the taxpayer's gross income.

However persuasive this argument may appear, it can not be overlooked that the taxpayer corporation appears to have been organized for the purpose of engaging in a general building contracting business; that it kept a considerable portion of its profits undistributed in order to protect its business; and that it held itself out to the public as ready to accept building construction contracts and did, during the year 1917, actually accept and perform one such contract from which it received a gross income of $4,633.92. And further, we find nothing in the above-quoted section 209, or any other part of the Revenue Act of 1917, which seems to warrant us in considering the sources of a corporation's gross income as an element in the determination of what is or is not " not more than a nominal capital." We are led to the conclusion that a capital fund of $100,628.93 is a sum of capital which can not in this taxpayer's case be termed nominal. *Lincoln Chemical Co.* v. *Edwards,* 289 Fed. 458; 2 Am. Fed. Tax Rep. 1953; *R. H. Martin, Inc.,* v. *Edwards,* 293 Fed. 258; 4 Am. Fed. Tax Rep. 3634.

The record of this appeal, considered in connection with the provisions of the above-quoted section 209 and the decisions of the courts herein referred to, has convinced us that the Commissioner's action in denying this taxpayer assessment under section 209 of the Revenue Act of 1917, and in computing its liability to excess profits taxes under section 210 of the same Act, should be approved.