W. P. BROWN & SONS LUMBER COMPANY, AND BROWN REALTY COMPANY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BROWN BROTHERS LAND & LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 39970, 39971. Promulgated October 12, 1932.

*W. W. Spalding, Esq.,* for the petitioners.
*J. A. Lyons, Esq.,* for the respondent.

1194

1196

OPINION.

Murdock: No evidence was offered in explanation of the incorporation expenses, amounting to $507, or the title examination and recording, amounting to $341. Apparently the Brown Realty Company was incorporated in the fall of 1922. Expenses incident to incorporation are not deductible as ordinary and necessary expenses of carrying on a business in any one year, but are capital expenditures relating to the entire period of corporate life. The cost of title examination and recording of a deed to the hotel property, if that is what the other item represents, is a part of the cost of the property and is not deductible as an ordinary expense of the year paid.

In 1922, the year for which the attorney was paid $1,500 by the Brown Realty Company, the company was carrying on no business that we know of in which it used the services of this attorney. Instead, it was building a hotel so that later it could carry on a business. All of the services of the attorney related to the construction of this building and perhaps to the organization of the corporation. He may also have had something to do with the loan secured by a bond issue maturing over 20 years, although the testimony is not clear on this point. The cost of legal services incident to the erection of the building is properly a part of the cost of the building. Those incident to organization should likewise be capitalized. Expenses of a loan should be spread over the life of the loan. So under no circumstances appearing in the record would this fee be deductible in its entirety in 1922. In fact, we can not say that any part of it should be deducted for that year. The Commissioner did not err in this respect.

The insurance premium mentioned in the second assignment of error, of course, added nothing to the value of the building, but such insurance is certainly not unusual in the construction of a building of the size of this hotel. If the petitioner were claiming it as part of the cost of the hotel, what defense would there be to the claim? It had no relation to any business carried on by the petitioner during the year 1922. It was properly treated by the Commissioner as a part of the cost. Cf. *Columbia Theatre Co.*, 3 B. T. A. 622.

The $10,000 expense of the bond issue was a part of the cost of securing the loan, a continuing benefit, and not an ordinary and

necessary expense attributable to carrying on the business in any one year. The Commissioner spread this expense ratably over the life of the loan. No greater amount was deductible in the year before us than the Commissioner has allowed. *Julia Stow Lovejoy*, 18 B. T. A. 1179; *Sigmund Spitzer*, 23 B. T. A. 776.

In our findings of fact we have listed the various items totaling $59,479.18 which the petitioner claims were incident to speeding the completion of the building. We have also explained the nature of each item as fully as the evidence permitted. For some items the record contains no explanation. In many instances the explanation fails to identify the item with the speeding-up process. While in others the expenditure is shown to have had no connection with this process. On any theory of the case such items may not be deducted from income of one year but must be left where the Commissioner placed them, as part of the cost of the building.

Decision of the question of whether or not an expenditure should be classified as capital or expense depends upon the exercise of judgment in the light of circumstances and good accounting principles. Cf. *Rankin* v. *Commissioner*, 60 Fed. (2d) 76. There are in the list before us a number of relatively small items which under other circumstances might form the basis of a deduction as ordinary expenses or losses. But where, as here, they were incurred in the ordinary course of erecting a building which was to become the principal business asset of the corporation, they should be included in the cost of the building. Liability insurance, loss of small tools, wages of watchmen necessary during the construction period, and telephone and telegram expense incident to construction, are some of the items we have in mind.

There are some items in the list, however, which were definitely and solely related to expedition in the completion of the building. This group would include the first three items representing the "overtime" paid by the Brown Realty Company. The company had contracted for the performance of certain work at a certain price based upon an 8-hour working day. In order to hasten this work the Brown Realty Company agreed to pay the contractor the difference between the amount charged by the workmen for working overtime and the amount they would have charged had the same hours been spent during a normal working day. Obviously, the amounts thus paid benefited the owner in only one way, i. e., they permitted the building to be occupied and used at an earlier date than otherwise. Likewise, items 4 and 5 fall within this group. The contracts there fixed certain times for the completion of certain work, with penalties for delay and bonuses for days saved. In both instances bonuses were earned, so that the owner paid something

for speed over what it would have paid had the work progressed only as rapidly as the parties had agreed was a normal rate. The only difference is that here the normal depends upon the agreement of the parties, whereas the union wage scale fixed the normal and overtime wages from which the first three items were determined. The furniture storage charge and at least a part of the drayage would also come within this group.

The cost of electric light (poles, current, and bulbs) incident to overtime work would be a similar expenditure. But the amount thus spent can not be determined from this record. The poles were for excavation, not for wrecking. We do not know that the excavating was rushed on an overtime basis, nor that it cost in all more than a normal amount. The items for light and bulbs included light for the temporary sidewalk and canopy, light for the advertising signs, and perhaps some normal charges for light in the building. These items can not be charged entirely to overtime work. Nor is there any basis in the record for a segregation. We can not see that the excess of union over nonunion wages for hodcarriers bears any relation to the speeding-up process. Originally, the cheaper nonunion labor was employed and the owner and contractor thought they could continue to use it. The other workmen insisted later upon the employment of union labor to perform these functions. This entailed additional cost which the owner had to pay, but it did not hasten completion of the work. The building cost just that much more than it would have cost had they been able to use nonunion labor. Suppose all wages had increased, would the increase be other than cost of the building or have any relation to time of completion? Item 37, the cost of erecting temporary signs leased for profit, is no part of the cost of the building, but an expense incident to earning some income in 1923. It was a proper deduction in that year. The other items are so clearly unrelated to the time element or are so inadequately explained as to require no particular discussion.

The petitioner contends that the overtime, bonus and storage items, which were expended solely for the purpose of advancing the day when the hotel could be used to produce income, should be offset as deductions against the earnings from the hotel for the initial period of use made possible by those expenditures, i. e., the last three months of 1923 and the first two months of 1924. The latter months are not before us and our question is whether any portion of these expenditures should be offset against the earnings of the last three months of 1923 as ordinary and necessary expenses of carrying on the business during these months or as a measure of extraordinary depreciation during this period. It does not appear, however,

that any extraordinary depreciation or exhaustion of the property took place during this period and there is no basis for a deduction under section 234 (a) (7), unless a rule should be applied such as is used to justify spreading the cost of a loan over the period that the borrower has the use of the money.

In O. D. 664, 3 C. B. 131, a bonus paid for early delivery of a steamship was held to be an ordinary and necessary expense deductible from income received between the date of delivery and the date it would have been delivered had no bonus been paid. The Commissioner has taken a different view, however, in the present case, which involves a new building instead of a vessel. Cf. *Tonningsen* v. *Commissioner*, 60 Fed. (2d) 199. The petitioner also cites two decisions of the Circuit Court of Appeals for the Third Circuit. *Atwater Kent Mfg. Co.* v. *Commissioner*, 43 Fed. (2d) 331, and *Frank & Seder Co.* v. *Commissioner*, 44 Fed. (2d) 147. These two cases reversed Board decisions reported at 15 B.T.A. 881, and 13 B.T.A. 1, respectively.

Arguments advanced in support of the petitioner's contention are not without persuasive force. But we must interpret the law as we find it and can not make exceptions, no matter how reasonable they may appear to be. The general rule is that the cost of capital assets is to be recovered through depreciation during use. Section 215 (a) (2) of the Revenue Act of 1921 provides that no deduction shall be allowed in any case in respect of " any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate." Section 235 makes this provision applicable in computing the net income of corporations. The amounts in question were paid out for new buildings. It is immaterial that they did not increase the value of the property in the sense of making the building a better building than it would have been otherwise. The phrase " made to increase the value of any property or estate " modifies " permanent improvements or betterments " and can not modify " new buildings " without violence to grammatical construction and without giving to the words other than their ordinary meaning. It would be both unusual and awkward to speak of " new buildings made to increase the value of any property or estate," but quite proper to speak of " permanent improvements or betterments made to increase the value of any property or estate." The words " or for " after " new buildings " indicate clearly that the latter only was intended. Thus the statute specifically and clearly provides that the income may not be reduced by the amount in question. Cf. *Robert Buedingen*, 6 B. T. A. 335.

*Judgment will be entered under Rule 50.*