Variety Construction Co. v. Commissioner. Variety Realty Co., Inc. v. Commissioner.
Variety Constr. Co. v. Commissioner
Docket Nos. 80329, 80331.
United States Tax Court
T.C. Memo 1962-257; 1962 Tax Ct. Memo LEXIS 51; 21 T.C.M. (CCH) 1391; T.C.M. (RIA) 62257; October 31, 1962
M. J. Levin, Esq., 606 W. Wisconsin Ave., Milwaukee, Wis., for the petitioners. Jerome M. Feltman, Esq., and William J. Wise, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent has determined deficiencies in the income tax of petitioners and additions to tax for the following fiscal years in the amounts stated below: Fiscal year
Addition to tax
ended
Income
Sec. 6651,
March 31
tax
I.R.C. 1954
Variety Construction Co.
1955
$10,435.26
$1,858.28
1956
5,860.97
None
1958
3,247.56
None
Variety Realty Co., Inc.
1956
1,205.12
301.28
1957
1,281.01
128.10
1958
1,165.25
None
*52 The issues to be decided are (1) whether respondent has erred in allocating the overhead expense of Variety Construction Co. attributable to the construction of four business buildings to the cost basis thereof to the respective owners and disallowing such allocated amounts as business deductions to that company and (2) whether Variety Construction Co. for 1955 and Variety Realty Co., Inc., for 1956 and 1957 are liable for penalties for late filing of their income tax returns. Findings of Fact To the extent the facts have been stipulated they are accordingly found as fact. Petitioner, Variety Construction Co., is a Minnesota corporation incorporated on April 4, 1950, and was authorized to transact business in the State of Wisconsin on September 3, 1953. This petitioner will hereinafter be referred to as Variety. Petitioner, Variety Realty Co., Inc., is a Wisconsin corporation incorporated on October 25, 1952. This petitioner will hereinafter be referred to as Realty. Bayview Shopping Center, Inc., is a Wisconsin corporation incorporated on December 21, 1954. This corporation will hereinafter be referred to as Bayview. Variety filed Federal corporation income tax returns *53 for the fiscal years ended March 31, 1955, 1956, 1957, and 1958 with the director of internal revenue at Milwaukee, Wisconsin. Realty filed its corporate income tax returns for the fiscal years ended March 31, 1956, 1957, and 1958 with the director of internal revenue at Milwaukee, Wisconsin. Variety during the fiscal years ended March 31, 1955, to March 31, 1958, was authorized to and did engaged in the general contracting business of building commercial construction. Variety, during the fiscal years ended Building in Minneapolis, Minnesota, which was completed subsequent to April 1, 1955, and which Variety owned from the time of its completion to March 31, 1958. The cost of the Smith-Corona Office Building capitalized on the books and tax returns of Variety included only the direct costs of various items directly chargeable to that building, and did not include any amount for indirectly applicable operative expenses, that is, overhead, incurred by Variety during the period when the Smith-Corona Office Building was being built. Variety built the Wausau Medical Arts Building in Wausau, Wisconsin, and the Merrill Food Store in Merrill, Wisconsin, for Realty, both of which were *54 completed subsequent to April 1, 1955, and which Realty owned from the time of completion to March 31, 1958. The costs of the Wausau Medical Arts Building and Merrill Food Store paid by Realty to Variety and capitalized on the books and tax returns of Realty included only the direct costs of various items directly chargeable to those buildings and did not include any amounts for indirectly applicable operative expenses, that is, overhead, incurred by Variety during he periods when the Wausau Medical Arts Building and Merrill Food Store were being built. Variety built the Bay View Shopping Center (also known as A & P Food Store) in Green Bay, Wisconsin, for Bayview, which was completed subsequent to April 1, 1955, and which Bayview owned from the time of completion to March 31, 1958. The cost of the Bay View Shopping Center paid by Bayview to Variety and capitalized on the books and tax returns of Bayview included only the direct costs of various items directly chargeable to that project, and did not include any amount for indirectly applicable operative expenses, that is, overhead, incurred by Variety during the period Bay View Shopping Center was being built. George Becker drew *55 the plans and designs for and was supervisor of the construction of the Smith-Corona Building, Wausau Medical Arts Building, Merrill Food Store, and Bay View Shopping Center (sometimes hereinafter referred to as the four buildings). He traveled at various times to the job sites. During the periods of construction of the four buildings, Realty and Bayview had no telephones, offices, stationery, or checking accounts. During the periods of construction of the four buildings, such expenses as salaries for Becker, his travel expense, bookkeeping expense, office rent, telephone, stationery, and other overhead expenses which were not included as direct costs on its tax returns were all paid by Variety. Variety incurred overhead expense other than direct costs in each of the fiscal years in amounts as follows: Fiscal year ended
Amount of over-
March 31
head expense
1955
$74,891.92
1956
41,519.72
1957
29,482.43
1958
27,981.36
Respondent determined that certain of the overhead expense incurred by Variety was not directly or indirectly allocable to the construction of the four buildings. He decreased the total overhead expense in each year by the amount of such *56 expenses to determine the amount of allocable overhead expense in each year, which he allocated to all work done by Variety, including the aforementioned four buildings, and increased the cost thereof accordingly. Respondent decreased the total overhead expense in each year by the amounts of purchase discounts and miscellaneous income earned in each year to determine the amount of allocable overhead expense in each year, part of which he allocated to the cost of the four buildings. The direct costs incurred by Variety for the four buildings in each fiscal year in which each project was being built are as follows: Fiscal year ended
Wausau Medi-
Bay View Shop-
March 31
Smith-Corona
cal Arts
Merrill Food
ping Center
1955
$30,616.64
$ 38,125.43
$63,962.00
None
1956
3,207.28
151,291.49
3,471.80
None
1957
None
16,127.84
None
$48,385.79
1958
None
7,133.01
None
68,714.49
Total direct costs for all construction work built by Variety in each of the fiscal years are as follows: Fiscal year ended
Total direct
March 31
costs [1] l1955
$507,390.51
1956
278,816.01
1957
498,690.86
1958
133,523.19
*57 Respondent's figure of total direct costs for all projects built by Variety in the fiscal year ended March 31, 1956, stated in the statutory notice to be $379,315.91 was incorrect due to a mathematical error by respondent and should have been $278,816.01. The amount of overhead expense in each year after the adjustment to total overhead above noted is as follows: Fiscal year ended
March 31
Amount
1955
$65,317.85
1956
34,575.85
1957
25,338.42
1958
24,002.03
The formula used by respondent to determine the amount of allocable overhead to be disallowed as a current deduction to Variety and added to the cost of each of the four buildings is as follows: (a) Determine the percentage of allocable overhead to total direct costs incurred on all work done in each year; (b) Apply the percentage determined in (a) to the direct costs incurred in each year on each of the four building projects. During the fiscal years ended March 31, 1955, through March 31, 1958, George Becker was the sole and controlling stockholder and president of Variety. During the fiscal years ended March 31, 1956, through March 31, 1958, he also was the sole stockholder and president of *58 Realty. From December 21, 1954, to February 19, 1957, Sylvia D. Becker, the wife of George Becker, owned 250 of the 500 outstanding shares of stock of Bayview. During this time there were three other stockholders of record, no one of which owned more than 125 shares of the 500 outstanding shares of Bayview. After February 19, 1957, George Becker and his wife Sylvia each owned 250 shares of Bayview stock, and they were the sole and equal owners of all outstanding stock of Bayview. No contracts were ever entered into between Variety and Realty for the building of the Wausau Medical Arts Building or Merrill Food Store. No fixed fee or limit on the costs of the buildings constructed by Variety for Realty and Bayview was ever set or understood. No profit to Variety was expected when it built the Wausau Medical Arts Building, the Merrill Food Store, and the Bay View Shopping Center. Variety entered into an agreement with Bayview for the former to build in Green Bay, Wisconsin. Under the terms of the agreement, Bayview was to pay Variety the cost of labor and materials plus a profit of 5 percent of the cost of labor and materials. The agreement entered into between Bayview and *59 Variety for the construction of the Bay View Shopping Center was disregarded and varied after February 19, 1957, when George Becker and his wife became the sole stockholders, and the contractual provision for Bayview to compensate Variety 5 percent over the direct costs of the project was never effected. George Becker treated Variety and Realty as the same organization in the dealings between the two companies. No regular payments to reimburse Variety for the costs expended on the construction of the Wausau Medical Arts Building, Merrill Food Store and the Bay View Shopping Center were made, nor did Variety ever bill Realty or Bayview for the amounts expended on the construction of the three projects. No charge was made on Variety's books against Realty or Bayview until the termination of the construction done for them. Variety's Federal income tax return for the fiscal year ended March 31, 1955, was filed on January 4, 1956. Realty's Federal income tax return for the fiscal year ended March 31, 1956, was filed on July 22, 1957, and for the fiscal year ended March 31, 1957, was filed on July 22, 1957. Allocable overhead expenses were incurred by Variety on the construction *60 of the four buildings. Ultimate Findings The method or formula used by respondent is a proper formula to use to determine the amount of overhead expenses allocable in each year to the construction of each of the four buildings. Variety, Realty, and Bayview were owned and controlled directly or indirectly by the same individual, George Becker. Variety, Realty, and Bayview did not deal at arm's length with each other regarding the construction of the Wausau Medical Arts Building and Merrill Food Store by Variety for Realty and the construction of Bay View Shopping Center by Variety for Bayview. An allocation of the total costs, including allocable overhead, of the Wausau Medical Arts Building, Merrill Food Store, and Bay View Shopping Center is necessary to clearly reflect the income of the related organizations. The income tax return of Variety for the fiscal year ended March 31, 1955, and the income tax returns of Realty for the fiscal years ended March 31, 1956, and March 31, 1957, were not filed within the time prescribed for filing and the failure to file timely returns was not due to reasonable cause. Opinion Issue 1 In its income tax returns for the years at *61 issue Variety has deducted as business overhead expense all such expense incurred by it during those years. Respondent has disallowed as a business expense deduction that portion of such overhead which he contends is properly allocable to the construction of four buildings built by Variety during that period, one for itself and the others for controlled corporations, and has added such allocated amounts to the cost basis of each building. Petitioners' primary contentions are that under the special circumstances surrounding the construction of each building Variety incurred no overhead expense attributable to such construction and in fact saved overhead expense by virtue of being able to thereby utilize and keep employed certain key employees who would otherwise have been without work during the periods of construction of such buildings. In the alternative, should we find respondent's allocations to be proper in principle, petitioners contend such allocations were excessive and arbitrary in amount in that the amounts allocated are not in accordance with such allocations by other builders in its business area. Respondent's allocation and disallowance of the deduction was in pursuance, *62 respectively, of the provisions of section 482[1] and section 263(a)(1) [2] of the Internal Revenue Code of 1954. *63 Because petitioners concede that they and Bayview are owned and controlled by George Becker, the key factual determination here remaining is whether under section 263(a) (1) the amounts of overhead disallowed as business expense deductions constitute amounts "paid out for new buildings." If they are, they are nondeductible as business expenses and must be added to the cost of the buildings in order that they may be recovered. That Variety "paid out" all of its overhead expenses cannot be and is not denied. That it "paid out" a portion thereof "for new buildings" seem to us a necessary conclusion from this record. In erecting the four buildings for itself, Realty, and Bayview without reimbursement for its overhead and without profit, it clearly was not dealing at arm's length with those for whom the respective buildings were constructed. Surely the fact that the buildings were erected during slack periods in order to provide continuous work for its construction crews was not sufficient justification for the rendition by it of services represented by its overhead without reimbursement therefor when the transactions are viewed as arm's length transactions. The value of whatever services *64 performed by Variety for which it was not reimbursed clearly was "paid out for new buildings" by the rendition of such services and would be nondeductible as business expense by virtue of the express provision of section 263(a)(1). Where corporations are controlled by a single individual, here George Becker, their operations are, to the degree of such control, to the benefit or detriment, as the case may be, of the controller. Transactions between them must be closely scrutinized in order that the tax consequences of their dealings with each other are properly attributed to the entity to which they are legally applicable in order that the true income tax liability of each may be determined. Such is the purpose of the powers conferred upon respondent by section 482. He has here properly allocated overhead expense of Variety to the cost basis of the respective new buildings. Only by so doing would it be possible for the respective owners thereof and, through his complete control and ownership thereof, George Becker, to recover such overhead cost. Petitioners contend however that even though we should sustain respondent's disallowance of Variety's overhead and his allocation thereof *65 to the cost basis of the respective buildings, we should nevertheless conclude that the amount of overhead disallowed as business expense was arbitrarily high and unjustified. They point to the fact that the amount so disallowed to Variety for the year ended March 31, 1956, and allocated to Realty as the cost of the buildings is greater that 50 percent of Variety's total overhead during that year and that the amount so disallowed to Variety for the year ended March 31, 1958, and allocated to Bayview as the cost of its building is greater than 40 percent of Variety's total overhead during the year. We do not find this fact to be significant when viewed in the light of the ratio of the direct cost of all construction performed by Variety for those years to the direct costs attributable to the buildings here involved in those years. Respondent's action seems rather in conformity therewith. He has used a formula to determine the portion of Variety's overhead which is allocable to the cost of each building. Prior to the application of his formula respondent adjusted Variety's total overhead expense by deducting therefrom that part which represented overhead not directly or indirectly attributable *66 to the construction of the involved buildings, such as advertising expense, bad debts, legal expense, rental property expense, and state income taxes. He further reduced the total of overhead by the amount of purchase discounts and miscellaneous income earned by Variety during the years at issue. Since the items of overhead remaining could not be traced to the construction of a particular building, respondent arrived at the portions thereof which he has allocated to the cost of each building in question by applying thereto the same percentage as the direct cost of construction of each building bore to the adjusted total direct costs for all buildings constructed by Variety during each year at issue. We have approved this formula, with a variation which is insignificant here, in V & M Homes, Inc., 28 T.C. 1121 (1957), affd. per curiam 263 F. 2d 837 (C.A. 6, 1959). Evidence adduced by petitioners indicates that other construction concerns operating in the same business area as Variety, in making application for mortgage loans, have allocated as low as 2 percent of their total overhead to the cost of buildings constructed. We do not believe that such allocations *67 have any significance here in the light of Variety's own experience and because a fixed percentage allocation made as an estimate is not probative with respect to actual overhead pertinent to the cost of construction of a particular building. See I.T. 2196, IV-2 C.B. 112. For the 4 years before us Variety's own overhead rates varied from 12.73 percent to 12.38 percent to 5.08 percent to 17.98 percent. Plainly this demonstrates the impracticability of a fixed, industry-average rate of allocation of overhead and the necessity for a separate determination thereof with respect to each building constructed. Petitioners contend that the use of respondent's formula leads to an erroneous result because of the inflation of direct cost of each of the four buildings because, in turn, of the admittedly intentional inefficiency in their construction arising from the fact that they were mere fill-in jobs where construction work was done only during slack time. In this connection we note that in V & M Homes, Inc., supra, where the only work done by the construction company during the taxable period involved was for a controlled corporation, all the construction company's overhead *68 and other expense was allocated to the cost basis of the building. Regardless of the excessiveness of building costs, whether they be direct costs or overhead, if they are in fact costs of construction, they are included in the cost of the capital asset and may be recovered only through its depreciation or upon its sale or exchange. Hotel Sulgrave, Inc., 21 T.C. 619 (1954); Driscoll v. Commissioner, 147 F. 2d 493 (C.A. 5, 1945), affirming a Memorandum Opinion of this Court on this point; W. P. Brown & Sons Lumber Co., 26 B.T.A. 1192 (1932), appeal dismissed 68 F. 2d 1022 (C.A. 6, 1934). For the above reason we do not find merit in other contentions of the petitioners set forth in their brief. Clearly the formula applied by respondent to arrive at the true taxable income of petitioner Variety and the other controlled corporations was adequate for that purpose and within not only his power but was his duty under section 482. Issue 2 Petitioners' respective tax returns clearly and admittedly were filed subsequent to the time provided by law. They seek to have their late filings excused and the additions to tax made by respondent *69 set aside. However, we have no evidence before us with respect to Realty's late filing and for that reason must sustain the additions to tax with respect to its returns. Although the record shows acts or omissions of Variety or its accountant relative to the preparation, execution, and filing of its income tax return, the late filing of which is here involved, it does so only with respect to a period subsequent to the lawful filing date. From such evidence we may conclude only that Variety's execution of the return through its officer George Becker occurred too late for a timely filing thereof. Subsequent events cannot possibly have bearing upon the reason or excuse for its failure to timely file its return. The record fails to disclose any justification for a holding "that the late filing (as to either petitioner) was due to reasonable cause and not due to willful neglect." Respondent's action is sustained on this issue. Because of certain stipulated concessions Decisions will be entered under Rule 50. Footnotes
1. The final figures on Exhibit N vary slightly from comparable figures shown in the statutory notice of deficiency because of stipulated adjustments and a correction made in respondent's amended answer.↩
1. SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades or businesses. ↩
2. SEC. 263. CAPITAL EXPENDITURES. (a) General Rule. - No deduction shall be allowed for - (1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. * * *↩